IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| DARREN JAMES COWEN, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>NANCY A. BERRYHILL, Acting )<br>Commissioner of the Social Security )<br>Administration, )<br>)<br>Defendant. ) | Case No. CIV-17-233-STE |

## MEMORANDUM OPINION AND ORDER

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration denying Plaintiff's applications for benefits under the Social Security Act. The Commissioner has answered and filed a transcript of the administrative record (hereinafter TR. ____). The parties have consented to jurisdiction over this matter by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c).

Upon careful consideration, the Court concludes the ALJ failed to properly consider the medical evidence supporting a conclusion that Plaintiff's severe back impairment could meet or equal the clinical criteria for an award of benefits under § 1.04A of the Listing of Impairments. Therefore, the Court **REVERSES AND REMANDS** the Commissioner's decision for further administrative proceedings.

**I. PROCEDURAL BACKGROUND**

Initially and on reconsideration, the Social Security Administration denied Plaintiff's applications for disability insurance benefits and supplemental security income. Following

an administrative hearing, an Administrative Law Judge (ALJ) issued an unfavorable decision. (TR. 13-26). The Appeals Council denied Plaintiff's request for review, and the decision of the ALJ became the final decision of the Commissioner.

## II. THE ADMINISTRATIVE DECISION

The ALJ followed the five-step sequential evaluation process required by agency regulations. *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); 20 C.F.R. §404.1520. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since September 20, 2011, the alleged disability onset date. (TR. 15).

At step two, the ALJ determined Plaintiff had one severe impairment— degenerative disc disease of the lumbar spine, post-surgical—and several non-severe conditions including hypertension, GERD, depression, insomnia and anxiety (TR. 15).

At step three, the ALJ found that Plaintiff's severe and non-severe impairments did not meet or medically equal any of the presumptively disabling impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1 (TR. 18). The ALJ summarized the clinical criteria for meeting Listing 1.04, but she did not discuss how the evidence supported her conclusion. (TR. 18).

At step four, the ALJ determined Plaintiff retained the residual functional capacity (RFC) to perform sedentary work with certain postural limitations. (TR. 18-19). With this RFC, the ALJ concluded that Plaintiff was not capable of performing his past relevant work as a truck driver. (TR. 24). At step five, the ALJ relied on the testimony of a vocational expert (VE) and determined there were other jobs in the national economy that Plaintiff could perform. The VE identified three such jobs by description and code from the

Dictionary of Occupational Titles (DOT). (TR. 73-74). The ALJ concluded Plaintiff was not disabled based on his ability to perform the identified jobs. (TR. 25-26).

## III. ISSUES PRESENTED

On appeal, Plaintiff alleges the ALJ erred: (1) by failing to discuss significantly probative evidence that conflicted with her findings, (2) by failing to support her assessment of Plaintiff's subjective statements with substantial evidence in the record, and (3) by failing to sufficiently analyze Listing 1.04A at step three of the sequential evaluation.

## IV. STANDARD OF REVIEW

This Court reviews the Commissioner's final decision "to determin[e] whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir. 2010). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation omitted).

While the court considers whether the ALJ followed the applicable rules of law in weighing particular types of evidence in disability cases, the court will "neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Vigil v. Colvin*, 805 F.3d 1199, 1201 (10th Cir. 2015) (internal quotation marks omitted).

## V. ANALYSIS OF EVIDENCE AT STEP THREE

Plaintiff's challenge to the adequacy of the ALJ's step-three analysis has merit and is dispositive of this case. At step three, an ALJ must determine whether a claimant's impairment is "equivalent to one of a number of listed impairments that the Secretary

acknowledged as so severe as to preclude substantial gainful activity." *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). If a claimant's impairment meets or equals in severity all the criteria specified in the listing, the claimant is considered per se disabled. *Knipe v. Heckler*, 755 F.2d at 146.

Whether a claimant's impairment meets or equals[1] a listed impairment is strictly a medical determination. *Ellison v. Sullivan*, 929 F.2d 534, 536 (10th Cir. 1990); 20 C.F.R. §§ 404.1525(c)(3)-(4), 416.925(c)(3)-(4); 404.1526(b), 416.926(b). "The claimant has the burden at step three of demonstrating, through medical evidence, that his impairments "meet *all* of the specified medical criteria" contained in a particular listing. *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) (emphasis in original). "An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Id.*

Once the claimant has produced such evidence, the burden is on the ALJ to identify and discuss any relevant listings. *Fisher-Ross v. Barnhart*, 431 F.3d 729, 733 n. 3. In doing so, the ALJ must weigh the evidence and make specific findings to support the step three determination. *Clifton v. Chater*, 79 F.3d at 1009.

The ALJ devoted only three short paragraphs to her discussion of Listing 1.04:

> The claimant does not have an impairment or combination of impairments that meet or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d); 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

---

[1] Medical equivalence to a Listing may be established by showing that Plaintiff's impairment(s) "is at least equal in severity and duration to the criteria of any listed impairment." 20 C.F.R. §§ 404.1526(a), 416.926(a). The determination of medical equivalence is made without consideration of vocational factors of age, education, or work experience. 20 C.F.R. §§ 404.1526(c), 416.926(c). It is Plaintiff's burden at step three to show that his condition is medically equivalent to a Listing.

> The undersigned considered the claimant's impairments individually and in combination, and these impairments do not meet or equal any of the medical listings. Further, no examining or treating source has reported the claimant has an impairment that meets or medically equals the criteria of a listed impairment.[2]
>
> Specifically, the medical evidence does not establish the requisite evidence of nerve root compression, spinal arachnoiditis or lumbar spinal stenosis as required under listing 1.04. Moreover, there is no evidence that the claimant's back disorder has resulted in an inability to ambulate effectively, as defined in 1.00B2b. The claimant testified that he occasionally uses a cane when he is out of the house, but that it was not prescribed for him.[3]

(TR. 18).

Listing 1.04, *Disorders of the Spine*, specifies the clinical criteria necessary to establish an individual's spinal disorder (such as herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fractures), is presumptively disabling. Regardless of the type of spinal disorder with which a claimant has been diagnosed, the disorder must result in "compromise of a nerve root (including cauda equina) or spinal cord."

Each of the subsections of Listing 1.04 require a claimant to demonstrate the existence of additional criteria, as set forth in subsections A, B and C of the Listing. But only Listing 1.04A is at issue in this case. To meet Listing 1.04A, in addition to demonstrating his spinal impairment results in compromise of a nerve root or the spinal cord, a claimant must also demonstrate:

---

[2] The ultimate decision as to whether a claimant's medical condition meets or equals a Listing is reserved for the Commissioner. *See* 96-5p, 1996 WL 374183, at *3-4. Therefore, the fact that no physician offered such an opinion is irrelevant to the step three analysis.

[3] A demonstration of the inability to ambulate effectively is required only for subpart C of Listing 1.04.

> [e]vidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine).

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04A.

To comply with 42 U.S.C. § 405(b)(1), an ALJ is "required to discuss the evidence and explain why he found that appellant was not disabled at step three." *Clifton v. Chater*, 79 F.3d at 1009. Moreover, the ALJ must link his findings to specific evidence in the record. *See Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001). Of course, a discussion of the evidence may not be essential if there is no evidence indicating a claimant may meet a listing. Additionally, if an ALJ's findings at later steps of the sequential evaluation demonstrate the inapplicability of a listing, the ALJ's failure to perform a separate analysis at step three may be excused. *See Fischer-Ross v. Barnhart*, 431 F.3d at 734-735. But where, as in this case, there *is* evidence that the claimant may meet the criteria of a listing, "the ALJ is required to provide a proper analysis. Otherwise, it is impossible to know how the ALJ weighed the evidence." *Groberg v. Astrue*, 415 F. App'x 65, 72 (10th Cir. 2011).

The ALJ necessarily discussed some of the medical evidence relevant to Plaintiff's chronic back pain in determining Plaintiff's RFC at step four of the sequential evaluation. She reported the findings of a lumbar MRI dated June 19, 2014. The MRI demonstrated post hemilaminectomy changes and right posterior lateral L3-4 disc herniation with significant—moderate to marked—right neuroforaminal stenosis. The MRI showed the bulging disc and facet arthropathy abutted (touched) two exiting nerve roots at L4-5. (TR 22; 1132). Plaintiff received one of many epidural steroid injections noted in the record in

June 2014. One of Plaintiff's treating physicians, Dr. Howton, expressed her concern that the nerve root being injected was "already tight." (TR. 1250-1251). Plaintiff contends these findings are sufficient to demonstrate nerve compression.

During a follow-up visit on June 26, 2014, the ALJ noted, Plaintiff exhibited back pain bilaterally during straight leg raises. He also had decreased range of motion. (TR. 22, 1238). In October 2014, Plaintiff reported chronic pain that radiated down both legs. He again exhibited reduced range of motion with flexion and extension as well as pain bilaterally while performing straight leg raises at 30 degrees. (TR. 22, 1241). In 2015, the ALJ noted, Plaintiff reported weakness in his legs at a physical therapy session. (TR. 22, 177).

In his brief, Plaintiff identifies numerous other medical records supporting a conclusion that Plaintiff may have demonstrated the existence of the clinical criteria necessary to meet or equal Listing 1.04A. Plaintiff exhibited neuroanatomic distribution of pain, as evidenced by numerous references to radiculopathy in the medical records. (ECF No. 19:30). Plaintiff also identifies medical records reflecting muscle weakness with diminished reflexes and sensation. (ECF No. 19:31, 32). Positive straight leg raising tests were also frequently reflected in the record. (ECF No. 19:32).

The ALJ did not discuss this evidence as it relates to whether or not Plaintiff's spinal impairment meets or equals Listing 1.04A. In her brief in support of the ALJ's unfavorable decision, the Commissioner offers two reasons why this Court should find Plaintiff has failed to demonstrate he meets all the medical criteria required by Listing 1.04A. First, the Commissioner contends evidence of positive straight leg raises is insufficient to meet that criterion because the medical records do not specify whether Plaintiff was sitting or lying

7

down when the tests were performed.[4] Additionally, the Commissioner states that, because the record does not contain an actual *diagnosis* of nerve root compression, the evidence of foraminal stenosis is insufficient to satisfy that criterion of the listing. (ECF No. 23: 14).[5] Neither of these arguments was made by the ALJ in support of her step three finding,

---

[4] The undersigned notes that the ALJ bears responsibility for ensuring that "an adequate record is developed during the disability hearing consistent with the issues raised." *Henrie v. United States Dep't of Health & Human Servs.*, 13 F.3d 359, 360–61 (10th Cir. 1993). The duty to re-contact medical sources is triggered when the ALJ determines that there is not enough evidence in the record to determine whether or not a claimant is disabled. *See Greer v. Astrue*, 2009 WL 799275, at 7 (W.D. Okla. Mar. 24, 2009) (unpublished op). Because the medical records did not specify the position in which Plaintiff experienced pain during straight leg raises, the ALJ could have re-contacted Plaintiff's treating physicians to find out whether the test was positive for pain in both positions, as required by the listing. In the alternative, the ALJ could have ordered a consultative physical examination.

[5] The undersigned has found authority to support the positions of both parties on this issue. Some sources seem to support Plaintiff's position that a finding of "foraminal narrowing" is per se evidence of nerve root compression. *See, e.g., Steward v. Astrue*, No. 6:11–CV00689–SI, 2012 WL 4210624, at *4 (D. Or. Sept. 19, 2002) (accepting, without comment, plaintiff's claim that evidence of "foraminal narrowing" indicated nerve root compression for Listing 1.04, but affirming unfavorable decision because claimant's impairment did not meet the remaining requirements). On its website, the Laser Spine Institute defines "foraminal stenosis":
> Foraminal stenosis, or narrowing, occurs when the open passageways between the spinal vertebrae (intervertebral foramina) are encroached upon by displaced bone or soft tissue, often due to degenerative changes in the spinal anatomy. Spinal nerve roots must travel through these small, hollow archways as they branch away from the spinal cord to reach other areas of the body. If a spinal foramina is obstructed, a sensitive nerve root can become compressed. The resulting pressure on the nerve root can cause it to send faulty signals along its pathway in the form of pain, numbness, tingling or weakness.

https://www.laserspineinstitute.com/back_problems/foraminal_stenosis/ (last accessed Jan. 10, 2018). In this case, after being diagnosed with foraminal stenosis, Plaintiff has experienced referred pain, tingling and weakness, even after surgery, suggesting a nerve in his lumbar spine is in fact compressed by the abutting disc material and facet arthropathy, as shown on the MRI.

In *Wright v. Astrue*, No. 2:11–CV–357–PRC, 2012 WL 3818219, at *9 (N.D. Ind. Sept. 4, 2012), however, the court rejected the plaintiff's claim that his impairment met listing 1.04 with a diagnosis of "foraminal narrowing" because the medical record never included a specific diagnosis of nerve root compression. On remand, the ALJ should revisit the evidence and determine whether Plaintiff has demonstrated a "compressed nerve." The ALJ may seek additional evidence in the form of a consultative examination, or she may wish to employ the services of a medical expert at a supplemental hearing.

however, and an ALJ's decision should be evaluated based solely on the reasons stated in the decision. *Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004). A decision cannot be affirmed on the basis of appellate counsel's *post hoc* rationalizations for agency action. *Knipe v. Heckler*, 755 F.2d 141, 149 n. 16 (10th Cir. 1985). Likewise, a reviewing court may not create *post hoc* rationalizations to explain the Commissioner's treatment of evidence when that treatment is not apparent from the Commissioner's decision. *Grogan v. Barnhart*, 399 F.3d 1257, 1263 (10th Cir. 2005). By considering legal or evidentiary matters not considered by the ALJ, a court risks violating the general rule against *post hoc* justification of administrative action. *Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004).

Because the ALJ did not sufficiently consider the evidence to determine whether Plaintiff met or equaled Listing 1.04A, this case is reversed and remanded for further administrative proceedings.

## ORDER

The Court has reviewed the medical evidence of record, the transcript of the administrative hearing, the decision of the ALJ, and the pleadings and briefs of the parties. Based on the forgoing analysis, the Court **REVERSES AND REMANDS** the Commissioner's decision for further administrative proceedings consistent with this Memorandum Order.

ENTERED on January 26, 2018.

_____
SHON T. ERWIN
UNITED STATES MAGISTRATE JUDGE